Christopher R. Hogle (USB #7223)
Elizabeth A. Rudolf (USB #16150)
*pro hac vice applications to be submitted*
Holland & Hart LLP
222 S. Main St., Ste. 2200
Salt Lake City, UT 84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
CRHogle@hollandhart.com
EARudolf@hollandhart.com

Murray D. Feldman (ISB #4097)
Holland & Hart LLP
800 W. Main St., Ste. 1750
Boise, ID 83701
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869
MFeldman@hollandhart.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| BUNKER HILL MINING CORPORATION, | |
| Plaintiff, | Case No.  21-209 |
| vs. | **COMPLAINT** |
| GOLD FINDER EXPLORATION LTD.; NORTHSTAR ENERGY LLC; and UNITED SILVER CORP., | |
| Defendants. | |

## <u>INTRODUCTION</u>

1.    Plaintiff Bunker Hill Mining Corporation ("Bunker Hill") brings this civil action

against Defendants Gold Finder Exploration Ltd., Northstar Energy LLC, and United Silver

Corp. (collectively "Defendants"), pursuant to Sections 107 and 113 of the Comprehensive

**COMPLAINT -1**

Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, to recover response costs consistent with the National Contingency Plan, as well as for equitable contribution, indemnity, and subrogation for response costs, incurred by it and to be incurred by it in connection with water treatment to address the release or threatened release of hazardous substances into the environment from the Crescent Mine south of Kellogg, in the Silver Valley of Shoshone County, Idaho.

2.      On information and belief, each Defendant listed below has either owned property interests associated with the Crescent Mine and/or operated the Crescent Mine during relevant times:

a.      Gold Finder Exploration Ltd.

b.      Northstar Energy LLC

c.      United Silver Corp.

3.      Placer Mining Corporation ("Placer") owns the Bunker Hill Mine, and Bunker Hill leases and operates the Bunker Hill Mine.

4.      The Crescent Mine is hydraulically connected to the Bunker Hill Mine such that water discharged from Bunker Hill Mine includes water from the Crescent Mine.

5.      Water discharged from the Bunker Hill Mine, which includes the water discharged from the Crescent Mine, is routed through the Kellogg Tunnel for treatment at the Central Treatment Plant.

6.      Water discharged from the Crescent Mine through the Bunker Hill Mine requires treatment because it contains acid mine drainage. Acid mine drainage is a result of acid-forming reactions occurring within a mine among water, oxygen, sulfide minerals (particularly pyrite), and bacteria. Water containing acid mine drainage has a typical pH level between 2.5 and 3.5

**COMPLAINT - 2**

and contains high levels of dissolved and suspended heavy metals, including arsenic, cadmium, lead, and mercury. For human receptors, the constituents of primary concern in the acid mine drainage are arsenic, cadmium, lead, mercury, and thallium. For aquatic and terrestrial receptors, the constituents of primary concern in the acid mine drainage are aluminum, arsenic, cadmium, copper, iron, lead, manganese, mercury, selenium, silver, and zinc.

7.      Impacts on human health from exposure to these constituents in the acid mine drainage include carcinogenic effects, skin lesions, neuropathy, gastrointestinal irritation, kidney damage, interference with metabolism, and interference with the functioning of the central nervous system. Impacts on the environment from exposure to these constituents in the acid mine drainage include significant mortality of fish and invertebrate species, elevated concentrations of metals in the tissues of fish, invertebrates, and plants, and reduced growth and reproduction of aquatic life.

8.      This acid mine drainage containing water from the Crescent Mine constitutes a release or threatened release of hazardous substances under CERCLA.

9.      If Bunker Hill did not collect the water from the Crescent Mine and route it through the Kellogg Tunnel for treatment at the Central Treatment Plant, acid mine drainage, including drainage from the Crescent Mine, would flow downhill through the mine yard, across properties where public and environmental exposures would occur, and into Bunker Creek and South Fork Coeur d'Alene River where it would have significant detrimental effects on the environment, including water quality and the ecosystem.

10.     The United States Environmental Protection Agency ("EPA") operates the Central Treatment Plant and bills costs associated with its operations.

**COMPLAINT - 3**

11.     Bunker Hill leases the Bunker Hill Mine from Placer and agreed to pay past and ongoing water treatment costs for the Bunker Hill Mine when it entered into the Settlement Agreement and Order on Consent for Response Action by Bunker Hill Mining Corp. ("Administrative Settlement Agreement") with EPA, effective May 15, 2018.

12.     Pursuant to the Administrative Settlement Agreement, Bunker Hill agreed to pay EPA for past water treatment costs for the period of November 1994 through November 2017. These past water treatment costs are for the water discharged through the Kellogg Tunnel and treated at the Central Treatment Plant while Placer operated the Bunker Hill Mine. This includes water discharged from the Crescent Mine.

13.     Additionally, pursuant to the Administrative Settlement Agreement, Bunker Hill pays ongoing costs to treat water discharged through the Kellogg Tunnel and treated at the Central Treatment Plant. This includes water discharged from the Crescent Mine.

14.     Bunker Hill has incurred, and continues to incur, necessary costs of response to those releases and threatened releases consistent with the National Contingency Plan, 40 C.F.R. Part 300, in connection with the water treatment at the Central Treatment Plant where water containing acid mine drainage associated with Crescent Mine discharges for treatment.

15.     Defendants have neither contributed to nor reimbursed Bunker Hill for any such costs. Instead Bunker Hill assumes payment obligations to EPA for the costs associated with treatment of acid mine drainage from the Crescent Mine at the Central Treatment Plant.

16.     Bunker Hill is entitled to payment from Defendants for the past and ongoing costs associated with treatment of water associated with Crescent Mine, and Defendants should be obligated to share costs for water treatment.

**COMPLAINT - 4**

17.     This action seeks judgment in Bunker Hill's favor and against Defendants ordering Defendants to pay costs for water treatment associated with the Crescent Mine under both CERCLA Sections 107 and 113 and equitable theories of indemnity, subrogation, and contribution.

18.     This civil action also seeks a declaratory judgment under 28 U.S.C. § 2201 and CERCLA Section 113(g), 42 U.S.C. § 9613(g), declaring that Defendants are liable under CERCLA for past, present, and future response costs and declaring Defendants' equitable share of liability for future response costs to be incurred by Bunker Hill in connection with water treatment at the Crescent Mine, including for predecessor companies for which any Defendant is the successor in interest.

## **PARTIES**

19.     Plaintiff Bunker Hill is a Nevada corporation with its principal place of business in Toronto, Ontario, Canada. Bunker Hill is a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

20.     On information and belief, Defendant Northstar Energy LLC is a Delaware limited liability company. On information and belief, Defendant Northstar Energy LLC is liable as the successor, through mergers, name changes, consolidations, and similar corporate transactions, for the liabilities of predecessor companies, including Celebration Mining Company and Royal Silver Mines, Inc., among others.

21.     On information and belief, Defendant Gold Finder Explorations Ltd. is a British Columbia corporation.

22.     On information and belief, Defendant United Silver Corp. is a British Columbia corporation.

**COMPLAINT - 5**

23.     Defendants and their predecessor companies are "persons" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

## JURISDICTION AND VENUE

24.     The Court has jurisdiction over this action and the parties hereto pursuant to CERCLA Section 107(a) and 113(b), 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C. §§ 1131. An actual, existing, and justiciable controversy exists between Bunker Hill and Defendants for each and every claim in this Complaint concerning Defendants' obligation to pay Bunker Hill for response costs that Bunker Hill has incurred and will in the future incur for water treatment costs associated with the Crescent Mine.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395 and CERCLA Sections 107(a) and 113(b), 42 U.S.C. §§ 9607(a) and 9613(b), because the claims in this lawsuit arose in this District and the acts for which Bunker Hill seeks to recover costs occurred in this District.

## STATUTORY BACKGROUND

26.     CERCLA Section 107(a), 42 U.S.C. § 9607(a), imposes liability for releases or threatened releases of hazardous substances from a facility on current owners and operators of the facility, past owners and operators at the time of the disposal of hazardous substances, and persons who arranged for the disposal or treatment of hazardous substances (commonly referred to as an "arranger"). Such persons may be liable to others for response costs incurred consistent with the National Contingency Plan, 40 C.F.R. Part 300, promulgated by the United States under authority of CERCLA Section 105, 42 U.S.C. § 9605. Specifically, Section 107(a) provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—
> (1) [T]he owner and operator of a vessel or a facility,
> (2) [A]ny person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were

disposed of, [or]

(3) [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party of entity and containing such hazardous substances,

(4) …From which there is a release or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

> …(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan…

27.     CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), grants a right to seek contribution from any person who is an owner, operator, or arranger. Specifically, this section provides:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

28.     CERCLA Section 113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B), allows a person who has resolved its liability for a release or threatened release of hazardous substances to the United States through a settlement agreement to seek contribution from others who have not resolved their liability. Specifically, it provides:

A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement.

29.     CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that the district court shall enter a declaratory judgment as to liability for response costs that will be binding on any subsequent actions to recover further response costs.

30.     The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

**COMPLAINT - 7**

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201(a).

31.     The term "owner or operator" is defined in CERCLA Section 101(20)(A), 42

U.S.C. § 9601(20)(A), as "in the case of an onshore facility or an offshore facility, any person

owning or operating such facility."

32.     The term "facility" is defined in CERCLA Section 101(9), 42 U.S.C. § 9601(9),

as "(A) any building, structure, installation, equipment, pipe or pipeline . . ., well, pit, pond,

lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft,

or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or

placed, or otherwise come to be located."

33.     CERCLA Section 101(29) defines "disposal" to have the meaning provided in

Section 1004 of the Solid Waste Disposal Act (as amended by the Resource Conservation and

Recovery Act, or "RCRA"), 42 U.S. § 6903. RCRA Section 1004(3), 42 U.S.C. § 6903(3),

provides that the term "disposal" includes the "discharge, deposit, . . . dumping, spilling, leaking,

or placing of any solid waste or hazardous waste into or on any land or water so that such solid

waste or hazardous waste or any constituent thereof may enter the environment . . ." RCRA

Section 1004(27), 42 U.S.C. § 6903(27), provides that the term "solid waste" includes any

"discarded material . . . resulting from mining operations."

34.     The term "release" is defined in CERCLA Section 101(22), 42 U.S.C. § 9601(22),

as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping,

leaching, dumping, or disposing into the environment."

**COMPLAINT - 8**

35.     The term "environment" is defined in CERCLA Section 101(8), 42 U.S.C. §

9601(8) as "(A) the navigable waters, the waters of the contiguous zone, and the ocean waters

. . . , and (B) any other surface water, ground water, drinking water supply, land surface or

subsurface strata, or ambient air within the United States or under the jurisdiction of the United

States."

## GENERAL ALLEGATIONS
### The Mines

36.     Placer owns the Bunker Hill Mine.

37.     Bunker Hill operates the Bunker Hill Mine.

38.     On information and belief, each Defendant either owned property interests

associated with the Crescent Mine and/or operated the Crescent Mine at relevant times between

November 1994 and the present, when contaminated water from the Crescent Mine's flooded

underground workings flowed to the Bunker Hill Mine and response costs were incurred for the

treatment of such water, which response costs Plaintiff is obligated to pay.

39.     Both the Crescent Mine and the Bunker Hill Mine are within the Bunker Hill

Mining and Metallurgical Superfund Site ("Site") located in Shoshone County, Idaho, and south

of Kellogg.

40.     The Crescent Mine directly hydraulically connects to the Bunker Hill Mine by the

Yreka crosscut, which remains open and allows water to flow from the Crescent Mine to the

Bunker Hill Mine.

41.     In addition to the Yreka Crosscut, the Crescent Mine hydraulically connects to

Bunker Hill Mine through geologic faulting. The Crescent Mine's underground workings are

flooded, meaning that the dewatering systems used to remove the water that naturally sits in the

ground and rock formations is not in operation, resulting in the underground mine features filling

**COMPLAINT - 9**

with water. The geologic faulting provides a pathway for the water from the Crescent Mine's flooded workings to infiltrate the Bunker Hill Mine.

42.     Through the Yreka Crosscut and faulting, water flows from the Crescent Mine to the Bunker Hill Mine, and this combined flow from the Crescent Mine and the Bunker Hill Mine then flows through the Kellogg Tunnel to the Central Treatment Plant for water treatment. If Bunker Hill did not capture the water from the Crescent Mine and route it through the Kellogg Tunnel for treatment at the Central Treatment Plant, this water would release to the ground and nearby surface waters beyond the mines.

43.     On information and belief, water from the Crescent Mine constitutes approximately 22% of the water discharged through the Kellogg Tunnel for treatment at the Central Treatment Plant.

**Response Costs**

44.     Water discharged from the Crescent Mine through the Bunker Hill Mine contains acid mine drainage, resulting from acid forming reactions in the mine, and requires treatment due to its low pH and high levels of dissolved and suspended heavy metals that may have adverse impacts on human health and the environment.

45.     Between November 1994 and November 2017, EPA incurred response costs for the treatment of water at the Central Treatment Plant for water conveyed from the Crescent Mine and the Bunker Hill Mine through the Kellogg Tunnel.

46.     Placer did not pay its portion of response costs for this water treatment.

47.     Neither Defendants nor their predecessor companies paid their portion of response costs for this water treatment.

48.     On August 17, 2017, Bunker Hill entered into a Mining Lease with Option to

Purchase with Placer.

49.     Subsequently, effective May 15, 2018, Bunker Hill entered into the Administrative Settlement Agreement with EPA, where Bunker Hill assumed Placer's obligations to pay for water treatment costs.

50.     Paragraph 38 of the Administrative Settlement Agreement requires payment of past water treatment costs incurred by EPA for the period of November 1994 through November 2017, according to a payment schedule.

51.     These past water treatment costs are for the period in which Placer operated the Bunker Hill Mine, and on information and belief, Defendants and/or their predecessor companies owned or operated the Crescent Mine. Bunker Hill had no involvement in the Site during this period.

52.     Paragraph 39 of the Administrative Settlement Agreement requires that water treatment costs incurred at the Central Treatment Plant from December 1, 2017, onward to be paid in semi-annual installments of $480,000 and reconciled annually.

53.     Both the past costs paid by Bunker Hill under the Administrative Settlement Agreement Paragraph 38 and the ongoing water treatment costs paid by Bunker Hill under this agreement's Paragraph 39 include costs for treating water from the Crescent Mine.

54.     Bunker Hill has paid $1,000,000 in past water treatment costs under Administrative Settlement Agreement Paragraph 38, and EPA is requiring Bunker Hill to pay additional sums for past water treatment pursuant to a payment schedule.

55.     For ongoing water treatment costs under the Administrative Settlement Agreement Paragraph 39, EPA has issued two invoices.

56.     Neither Defendants nor their predecessor companies has paid *any* costs incurred

**COMPLAINT - 11**

for treatment of water at the Central Treatment Plant even though those costs include significant

expenses to treat water discharged from its Crescent Mine through the Bunker Hill Mine.

## STATUTORY NOTICE

57.      A copy of this Complaint will be provided to the Attorney General of the United

States and to the EPA Administrator, as required by CERCLA Section 113(*l*), 42 U.S.C. §

9613(*l*).

## FIRST CAUSE OF ACTION
### CERCLA Cost Recovery
### Sections 107(a)(1), (2), (3) & (4)(B), 42 U.S.C. §§ 9607(a)(1), (2), (3) & (4)(B)
### Owner, Operator, and Arranger Liability

58.      Bunker Hill incorporates by reference each foregoing allegation as if fully set

forth herein.

59.       CERCLA Section 107(a) imposes liability for the release or threatened release of

hazardous substances at a facility on any person who currently owns the facility or who owned

the facility at the time of disposal of the hazardous substances. 42 U.S.C. § 9607(a)(1), (2).

60.      CERCLA Section 107(a) imposes liability for the release or threatened release of

hazardous substances at a facility on any person who currently operates the facility or who

operated the facility at the time of disposal of the hazardous substances. 42 U.S.C. § 9607(a)(1),

(2).

61.      CERCLA Section 107(a) imposes liability for the release or threatened release of

hazardous substances on any person who by contract, agreement, or otherwise arranged for

disposal or treatment of hazardous substances.

62.      Any person responsible as an owner, operator, or arranger under CERCLA

Section 107(a) is liable to any other person who incurs necessary response consistent with the

National Contingency Plan. 42 U.S.C. § 9607(a).

**COMPLAINT - 12**

63.     The Bunker Hill Mine, the Crescent Mine, and the Central Treatment Plant are each a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). They are located within the Site, which also is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

64.     Water discharged from the Crescent Mine to the Bunker Hill Mine contains acid mine drainage and heavy metals that are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

65.     "Hazardous substances," within the meaning of CERCLA Section 101(14), were disposed of when Defendants and/or their predecessor companies discharged, or allowed to be discharged, water containing acid mine drainage into Bunker Hill Mine through the Yreka Crosscut and geologic faulting.

66.     There have been "releases" or "threatened releases" within the meaning of CERCLA Section 101(22), 42 U.S.C. § 9601(22), of hazardous substances into the environment when Defendants and/or their predecessor companies discharged, or allowed to be discharged, water containing acid mine drainage into Bunker Hill Mine through the Yreka Crosscut and faulting. If Bunker Hill did not collect the water from the Crescent Mine and route it through the Kellogg Tunnel for treatment at the Central Treatment Plant, acid mine drainage, including drainage from Crescent Mine, would flow downhill through the mine yard, across properties where public and environmental exposures would occur, and into Bunker Creek and South Fork Coeur d'Alene River where it would have significant detrimental effects on the environment, including water quality and the ecosystem.

**COMPLAINT - 13**

67.    The actions taken and to be taken for which the costs have and will be incurred by Bunker Hill constitute "response" actions within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25).

68.    Bunker Hill has incurred and will continue to incur necessary response costs as defined by CERCLA Section 101(25), 42 U.S.C. § 9601(25), as a result of the release and/or threatened release of hazardous substances. The costs incurred and to be incurred by Bunker Hill are and will be consistent with the National Contingency Plan.

69.    Pursuant to National Contingency Plan Section 300.700(c)(3)(ii), 40 C.F.R. § 300.700(c)(3)(ii), "[a]ny response action carried out in compliance with the terms of an order issued by EPA pursuant to section 106 of CERCLA, or a consent decree entered into pursuant to section 122 of CERCLA, will be considered 'consistent with the [National Contingency Plan].'"

70.    Bunker Hill's past response costs and ongoing response costs for water treatment are owed pursuant to the Administrative Settlement Agreement, which was issued by EPA pursuant to Section 106 of CERCLA, among other provisions of CERCLA.

71.    Bunker Hill's payment of water treatment costs for the Central Treatment Plant substantially complies with the National Contingency Plan, and water treatment at the Central Treatment Plant results in a CERCLA quality cleanup.

72.    Bunker Hill has paid $1,000,000 in past water treatment costs, and EPA is requiring Bunker Hill to pay additional sums for past water treatment pursuant to a payment schedule. Further, EPA is requiring Bunker Hill to pay ongoing water treatment costs semi-annually, and to be reconciled annually. EPA has issued two invoices for ongoing water treatment.

**COMPLAINT - 14**

73.     On information and belief, Defendants or their predecessor companies have owned or operated Crescent Mine, or arranged for disposal of hazardous substances by releasing water from Crescent Mine to Bunker Hill Mine that is subsequently treated at the Central Treatment Plant, during the times for which Bunker Hill seeks recovery of response costs.

74.     As such, Defendants are liable under CERCLA Section 107(a) as owners, operators, arrangers, and/or successors to owners, operators and/or arrangers.

75.     On information and belief, water from Crescent Mine has constituted and continues to constitute approximately 22% of the water discharged through the Kellogg Tunnel for treatment at the Central Treatment Plant.

76.     Bunker Hill has incurred and will continue to incur necessary response costs consistent with the National Contingency Plan, including response costs associated with treating water from the Crescent Mine.

77.     Defendant are therefore liable to Bunker Hill under CERCLA Section 107(a), 42 U.S.C. § 9607(a), for response costs incurred and to be incurred by Bunker Hill in connection with water treatment costs.

78.     Defendants are jointly and severally liable for the response costs Bunker Hill has incurred and will incur.

79.     Bunker Hill is entitled to payment from Defendants for the portion of water treatment costs associated with the Crescent Mine pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), including the Crescent Mine's portion of the past treatment costs for the period of November 1994 through November 2017 and the Crescent Mine's portion of the ongoing water treatment costs.

**COMPLAINT - 15**

## SECOND CAUSE OF ACTION
### CERCLA Contribution
### Sections 113(f)(1) & (f)(3)(B), 42 U.S.C. §§ 9613(f)(1) & (f)(3)(B)

80.     Bunker Hill incorporates by reference each foregoing allegation as if fully set forth herein.

81.     CERCLA Section 113(f)(3)(B), 42 U.S.C. § 96113(f)(3)(B), provides that a person who has resolved its liability to the United States for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not protected from contribution under CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2).

82.     Defendants are liable for CERCLA response costs incurred for water treatment for water discharged from Crescent Mine as owners, operators, and/or arrangers, or as the successors to companies that were owners, operators, or arrangers, for disposal of hazardous substances at Crescent Mine.

83.     Bunker Hill has incurred response costs in connection with water treatment of discharges from both the Crescent Mine and Bunker Hill Mine under the Administrative Settlement Agreement that resolved Bunker Hill's liability to the United States under CERCLA.

84.     On information and belief, water from Crescent Mine has constituted and continues to constitute approximately 22% of the water discharged through the Kellogg Tunnel for treatment at the Central Treatment Plant.

85.     Bunker Hill has incurred response costs in connection with water treatment beyond its equitable share, and the Administrative Settlement Agreement obligates Bunker Hill to incur additional response costs beyond its equitable share.

86.     On information and belief, Defendants are not protected from contribution under CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), because Defendants have not resolved their

**COMPLAINT - 16**

liability to the United States or a State for water treatment costs in an administrative or judicially approved settlement.

87.    Defendants have not paid Bunker Hill their equitable share of response costs for water treatment, and Bunker Hill is entitled to contribution from Crescent.

88.    Bunker Hill is entitled to payment from Defendants for the portion of water treatment costs associated with the Crescent Mine pursuant to CERCLA Section 113, 42 U.S.C. § 9613, including their portion of the past treatment costs for the period of November 1994 through November 2017 and their portion of the ongoing water treatment costs.

### THIRD CAUSE OF ACTION
**Declaratory Judgment**
**CERCLA Sections 113(f) & (g)(2), 42 U.S.C. §§ 9613(f) & (g)(2)**
**Declaratory Judgment Act, 28 U.S.C. § 2201**

89.    Bunker Hill incorporates by reference each foregoing allegation as if fully set forth herein.

90.    CERCLA Section 113(g)(2) provides that in an initial action for cost recovery brought under Section 107(a) of CERCLA, the court shall enter a declaratory judgment on liability that will be binding on any future action for response costs as defined under CERCLA Sections 101(23)–(25), 42 U.S.C. § 9601(23)–(25).  A CERCLA Section 113(g)(2) declaratory judgment is also available in an initial action for contribution brought under Section 113(f).

91.    The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in case of actual controversy, the court may declare the rights and other legal relations of any interested party seeking such declaration.

92.    Defendants are liable for CERCLA response costs to be incurred for water treatment as owners, operators, and/or arrangers, or as the successors to companies that were owners, operators, or arrangers, for disposal of hazardous substances from Crescent Mine.

**COMPLAINT - 17**

93.     On information and belief, water from Crescent Mine has constituted and continues to constitute approximately 22% of the water discharged through the Kellogg Tunnel for treatment at the Central Treatment Plant.

94.     An actual, present, and justiciable controversy exists between Bunker Hill and Defendants concerning Defendants' obligations to reimburse Bunker Hill for response costs and other expenses Bunker Hill will incur in the future for water treatment.

95.     Bunker Hill and Defendants have adverse legal interest of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

96.     Bunker Hill's future response costs are neither remote nor speculative.

97.     CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201, entitle Bunker Hill to declaratory judgment that Defendants are liable for response costs or damages to be incurred in connection with water treatment.

98.     Bunker Hill is entitled to a judicial declaration of Defendants' equitable share of liability for response costs or damages to be incurred in connection with water treatment.

## FOURTH CAUSE OF ACTION
### Indemnity, Subrogation, and Contribution

99.     Bunker Hill incorporates by reference each foregoing allegation as if fully set forth herein.

100.    As mine operators, owners and/or arrangers for disposal, Defendants and/or their predecessor companies had a duty to prevent and manage discharge of water containing acid mine drainage. Defendants and/or their predecessor companies failed to control the discharge of the Crescent Mine's water containing acid mine drainage from entering the Bunker Hill Mine through the Yreka Crosscut and geologic faulting in the mine workings. Defendants' and/or their predecessor companies' failure to do so has resulted in Bunker Hill being obligated to pay for

**COMPLAINT - 18**

water treatment costs at the Central Treatment Plant for water that discharges from the Crescent

Mine to the Bunker Hill Mine and caused Bunker Hill's damages. As such, Defendants are liable

to Bunker Hill for the payments made and to be made by Bunker Hill to address water treatment

needs and EPA's demands associated with Defendants' and/or their predecessor companies'

discharges from the Crescent Mine.

101.    A party is entitled indemnification, contribution, and/or subrogation where one

party is compelled or has a practical compulsion to pay for damages caused by another.

102.    Bunker Hill and Defendants are liable to EPA for water treatment costs at the

Central Treatment Plant; however, Bunker Hill should not be liable for the costs associated with

treating water from the Crescent Mine. Defendants themselves are liable to third-party EPA for

water treatment costs at the Central Treatment Plant associated with the water discharged from

the Crescent Mine.

103.    On information and belief, water from Crescent Mine has constituted and

continues to constitute approximately 22% of the water discharged through the Kellogg Tunnel

for treatment at the Central Treatment Plant.

104.    Neither Defendants nor their predecessor companies has paid any costs associated

with the treatment of water at the Central Treatment Plant, which includes water discharged from

Crescent Mine.

105.    EPA demanded that Bunker Hill pay for past and ongoing water treatment costs at

the Central Treatment Plant in order for Bunker Hill to assume operations of the Bunker Hill

Mine. Bunker Hill reasonably settled with EPA for these water treatment costs, which include

costs associated with treatment of water discharged from the Crescent Mine.

**COMPLAINT - 19**

106.    As part of this settlement, Bunker Hill has agreed to pay past response costs for water treatment for the period of November 1994 through November 2017 and ongoing water treatment costs to be billed semi-annually and reconciled annually.

107.    Bunker Hill has paid $1,000,000 in past water treatment costs, and EPA is requiring Bunker Hill to pay additional sums for past water treatment pursuant to a payment schedule. Further, EPA is requiring Bunker Hill to pay ongoing water treatment and has issued two invoices for ongoing water treatment.

108.    These costs include costs for water treatment associated with the Crescent Mine and exceed Bunker Hill's pro rata share of the liability for water treatment.

109.    Bunker Hill has been compelled and has a practical compulsion to pay damages caused by Defendants and/or their predecessor companies to settle liability to EPA in order to operate the Bunker Hill Mine.

110.    Bunker Hill has assumed and paid more than its pro rata share for both past and ongoing water treatment costs while Defendants have not assumed or paid any of these water treatment costs.

111.    Bunker Hill in entitled to equitable indemnification, subrogation, or contribution from Defendants for the Crescent Mine's portion of past and ongoing water treatment costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bunker Hill respectfully requests the Court enter judgment in its favor and against Defendants on the causes of action of this Complaint as follows:

A.      On its First Cause of Action, pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), judgment in favor of Bunker Hill and against Defendants for past response costs incurred for water treatment at the Crescent Mine in an amount to be proven at trial.

**COMPLAINT - 20**

B.      On its Second Cause of Action, pursuant to CERCLA Section 113, 42 U.S.C. § 9613, judgment in favor of Bunker Hill and against Defendants for Defendants' equitable share of response costs already incurred by Bunker Hill in connection with water treatment at the Crescent Mine in an amount to be proven at trial.

C.      On its Third Cause of Action, pursuant to CERCLA Section 113(g)(2) and the Declaratory Judgment Act, 42 U.S.C. § 9613(g)(2) and 28 U.S.C. § 2201, judgment declaring that Defendants are liable for response costs to be incurred by Bunker Hill in connection with water treatment and declaring Defendants' equitable share of liability for future response costs to be incurred by Bunker Hill in connection with water treatment at the Crescent Mine in an amount to be proven at trial.

D.      On its Fourth Cause of Action, judgment in favor of Bunker Hill and against Defendants for indemnification, subrogation, and/or contribution for Crescent Mine's portion of water treatment costs in an amount to be proven at trial.

E.      On all Causes of Action, costs, attorney fees, and interest, as allowed by law; and

F.      For such further and other relief that the Court deems equitable and just.

**COMPLAINT - 21**

DATED:  May 14, 2021

HOLLAND & HART LLP

By /s/ Murray D. Feldman
    Christopher R. Hogle
    Elizabeth A. Rudolf
    *pro hac vice applications to be submitted*
    Holland Hart LLP
    222 S. Main St., Ste. 2200
    Salt Lake City, UT 84101
    CRHogle@hollandhart.com
    EARudolf@hollandhart.com

    Murray D. Feldman
    Holland & Hart LLP
    800 W. Main St., Ste. 1750
    Boise, ID 83701
    MFeldman@hollandhart.com

    *Attorneys for Plaintiff*

16727545_v1

**COMPLAINT - 22**